**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
www.flsb.uscourts.gov

IN RE:                                    Case Number: 16-26883-PGH

BRUCE C. BLACK                            Chapter 7 Proceeding

　　　　Debtor
_____/

PROTON SOLUTIONS LLC

　　　　Plaintiff
vs.
                                          Adv. Case No.: _____
BRUCE C. BLACK

　　　　Defendant
_____/

**COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT UNDER 11 U.S.C. SECTION 523**

　　　Comes Now the Plaintiff, PROTONS, LLC, a creditor and party in interest in the above referenced bankruptcy proceeding, by and through the undersigned attorney, and brings this Complaint to Determine Dischargeability of Debt under 11 U.S.C. §523 and specifically 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(4) and alleges:

**I. Jurisdiction and Venue**

　　　1.  This is an adversary proceeding pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure to determine dischargeability of a debt pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(4) and alleges:

　　　2.  This Court has jurisdiction over the subject matter of this Complaint as a core proceeding pursuant to the provisions of 28 U.S.C. §1334 and §157(b)(2)(I) and 11

1

U.S.C. §523 because this is a proceeding to determine the dischargeability of a particular debt which would impact upon the handling and administration of the bankrupt estate.

3. This Court has fixed November 21, 2017 as the last day to file a Complaint to Object to Discharge of Debtor Under 11 U.S.C. §727 and to Determine Dischargeability of Debt under 11 U.S.C. §523. This Complaint, therefore, has been timely filed.

4. Venue is properly with this Court under 28 U.S.C. §1409(a).

## II. Parties

5. Defendant, BRUCE C. BLACK, hereinafter referred to as "Debtor", filed a Voluntary Petition for Relief in this Court under Chapter 7 of Title 11 of the United States Code on December 23, 2016.

6. Debtor may be served, pursuant to Bankruptcy Rule 7004(b)(1), by mailing a copy of the Summons and Complaint to 4300 So. US Highway One, Apartment 203, Jupiter, Florida 33477 which address constitutes either Debtor's dwelling house or usual place of abode, or the place in which the Debtor regularly conducts a business or profession.

7. Plaintiff, PROTON SOLUTIONS LLC, is a Florida Limited Liability Company whose principal office is located in Palm Beach County, Florida and a creditor of the Debtor. Plaintiff's business was and is related to LED lighting design, sales, and retrofitting of existing lighting and the installation same.

## III. General Allegattions

8. At all times pertinent to this proceeding, Debtor was a member of the Plaintiff who, working with Debtor's long-time associate and business affiliate, MYLES

2

FERRIS, hereinafter referred to as "FERRIS", engaged in sales, marketing, and customer service relations with clients of Plaintiff.

9. Debtor, a member of the Plaintiff LLC, was Plaintiff's sales manager.

10. FERRIS used the title of "Vice-President of Sales".

11. In March, 2015, through the efforts of both Debtor and FERRIS, Plaintiff came to understand that it had secured a client, INVESTMENTS UNLIMITED, hereinafter referred to as "INVESTMENTS", which was of the largest commercial and residential landlords in Boca Raton, Florida. INVESTMENTS UNLIMITED was the fictitious trade name registered to JAMES H BATMASIAN and MARTA BATMASIAN.

12. At the inception of the business relationship with INVESTMENTS, Plaintiff required as its protocol that all work orders, contracts, purchase orders, order changes and contracts with INVESTMENTS be signed by INVESTMENTS' duly authorized employees.

13. Subsequently, Plaintiff undertook lighting projects at INVESTMENTS' properties.

14. Debtor, acting as sales manager and customer service representative for the Plaintiff, presented Plaintiff with documents purportedly signed by INVESTMENTS' duly authorized employees.

15. Debtor, acting as sales manager and customer service representative for Plaintiff, took it upon himself to obtain payment from INVESTMENTS and would purportedly deposit INVESTMENTS' payments to Plaintiff's bank accounts.

16. Over the course of time, payments for the work done at the INVESTMENT Properties began to dwindle.

17. Debtor, citing the desire to maintain good client relations with INVESTMENTS, discouraged Plaintiff's other employees from intervening with INVESTMENTS in an effort to obtain payment.

18. Plaintiff allowed Debtor to continue to work with INVESTMENTS regarding payment issues.

19. Debtor continued to represent to Plaintiff that payments for product and labor performed at INVESTMENTS property were being made to Plaintiff by INVESTMENTS.

20. In or about October, 2015, Debtor represented to Plaintiff that Debtor had just formed a corporation for the purpose of installing kitchen cabinets at properties owned by INVESTMENTS and to perform residential remodeling of homes owned by INVESTMENTS.

21. In fact, the corporation, named PALM BEACH HOLDINGS GROUP, INC., a Florida for-profit corporation, hereinafter referred to as "HOLDINGS", had been formed in January, 2015, prior to Plaintiff's involvement with INVESTMENTS.  Debtor was President of HOLDINGS during the entire course of its existence.

22. Debtor and HOLDINGS did not have the financial wherewithal to engage in the cabinet installation and home remodeling ventures and requested that Plaintiff use its credit to acquire the cabinets and remodeling materials, labor and other abilities to work in the background to enable HOLDINGS to keep its commitments.  Debtor further represented that the project would be a "pass-through" for Plaintiff, meaning that HOLDINGS would be the party with whom INVESTMENTS would deal with all payments, including profit, paid to HOLDINGS would be paid to Plaintiff.  Debtor gave as a reason for the arrangement that INVESTMENTS would not want to have kitchen

4

cabinet installation and remodeling of homes handled by company known as an electrical contractor.

23. Debtor represented to Plaintiff that HOLDINGS would pay Plaintiff to provide product and the labor and equipment necessary to install the product at INVESTMENTS properties.

24. All product used and installed at INVESTMENTS properties, both as to lighting, kitchen cabinets and home remodeling was the property of the Plaintiff.

25. All equipment used at the INVESTMENTS properties was the property of the Plaintiff.

26. All workers and laborers working at the INVESTMENTS properties were the employees and contractors of the Plaintiff, and their wages and compensation for their services were paid to them by the Plaintiff.

27. Payments from INVESTMENTS for the product installed, equipment used and labor performed by Plaintiff's at INVESTMENTS properties for all phases of Plaintiff's involvement, to-wit: 1) installation of lighting; 2) installation of kitchen cabinets, and 3) remodeling of homes, dwindled to the point of being seriously delinquent.

28. Debtor represented to Plaintiff that Debtor was in continuous discussion with INVESTMENTS to have payment made to Plaintiff on its invoices and orders.

29. Debtor represented to Plaintiff that Debtor was in continuous discussion with INVESTMENTS to have payment made to Plaintiff on its invoices and orders and to HOLDINGS for the cabinet installation and home remodeling.

30. Debtor represented to Plaintiff that INVESTMENTS insisted that Plaintiff

continue to work on ongoing projects as a condition to being paid for completed projects.

31. Plaintiff's representative, PATRICK SCHNEIDER, took it upon himself to meet with employees of INVESTMENTS at INVESTMENTS properties to determine the status of unpaid invoices relating to the orders, contracts and invoices for work performed directly by Plaintiff at INVESTMENTS properties.

32. As a result of direct meetings between Plaintiff's representative, PATRICK SCHNEIDER, and representatives of INVESTMENTS, Plaintiff learned that INVESTMENTS had no knowledge of the existence of the Plaintiff or Plaintiff having Installed lighting at INVESTMENTS properties.

33. As a result of the direct meeting between Plaintiff's representative, PATRICK SCHNEIDER, and representatives of INVESTMENTS, Plaintiff ascertained that for every job purportedly obtained by Debtor for the benefit of Plaintiff that the proposals, invoices, contracts, purchase orders, order changes and contracts to INVESTMENTS were documents bearing the name, address and information of HOLDINGS.

34. As a result of the direct meeting between Plaintiff's representative, PATRICK SCHNEIDER, and representatives of INVESTMENTS, Plaintiff ascertained that payments for product, equipment and labor performed at INVESTMENTS' properties on contracts, invoices, purchase orders and change orders for lighting installation which Debtor had represented to Plaintiff were projects between Plaintiff and INVESTMENTS were in fact billed by HOLDINGS on HOLDINGS billing statements and that money for Plaintiff's work installing lighting at INVESTMENTS properties was actually paid to

HOLDINGS.

35. As a result of the direct meeting between Plaintiff's representative, PATRICK SCHNEIDER, and representatives of INVESTMENTS, Plaintiff ascertained that payments to HOLDINGS for the installation of kitchen cabinets were not delinquent.

36. Debtor's representations to Plaintiff that HOLDINGS had not been paid by INVESTMENTS for work completed was false.

37. Debtor's representations to Plaintiff that continuing to install kitchen Cabinets at INVESTMENTS properties was necessary to ensure payment for completed kitchen cabinet installation was false.

38. Debtor made the false representations to induce Plaintiff to continue to use its credit, product, equipment and labor, at Plaintiff's expense, to enable Debtor and HOLDINGS to bill for and receive payment from INVESTMENTS.

39. Debtor made representations to Plaintiff that INVESTMENTS gave Debtor payments for the installation of lights under Plaintiff's invoices, work orders and purchase orders and that Debtor deposited the payments into Plaintiff's bank accounts.

40. In fact, the deposits made into Plaintiff's bank accounts on its purported projects with INVESTMENTS were paid by Debtor using HOLDINGS' funds.

41. Debtor did not disclose the existence of Plaintiff to INVESTMENTS.

42. Debtor did not assert the existence of a principal-agent relationship between Plaintiff and HOLDINGS to INVESTMENTS.

43. As a result of the direct meeting between Plaintiff's representative, PATRICK SCHNEIDER, and representatives of INVESTMENTS, Plaintiff ascertained

that all signatures upon documents given by Debtor to Plaintiff on Plaintiff's invoices, work orders and purchase orders were not signatures of INVESTMENTS employees but instead forgeries.

44.    Debtor used those forged signatures on Plaintiff's paperwork to induce Plaintiff to take the time and incur the expense of installing product at INVESTMENTS' properties under the premise that Plaintiff was performing work at the request of INVESTMENTS.

45.    Debtor's representations to Plaintiff as to the source of the funds being deposited to Plaintiff's bank accounts were false.

46.    Debtor's representations to Plaintiff that Debtor developed INVESTMENT as a client of the Plaintiff were false.

47.    Debtor made representations to induce Plaintiff to incur the expense of providing Plaintiff's product, equipment and labor for light installation at INVESTMENTS properties while retaining payments from INVESTMENTS for Debtor's and HOLDINGS' benefit.

### IV. Basis to Object to Discharge

### COUNT ONE--11 U.S.C. §523(a)(2)(A)
Debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud

48.    Plaintiff repeats, restates and realleges each and every allegation contained Paragraphs 1 through 47, inclusive, of this Complaint as if fully set forth herein verbatim.

49.    Debtor made the following representations to Plaintiff knowing that the Representations were false:

8

a)  Debtor and FERRIS obtained INVESTMENTS as a client for Plaintiff;

b) Debtor submitted Plaintiff's invoices, work orders and change orders to INVESTMENTS for work to be performed installing lighting at INVESTMENTS properties;

b) Debtor obtained signed authorizations by INVESTMENTS employees on Plaintiff's invoices, work orders and change orders for Plaintiff to do work installing lighting at INVESTMENTS properties;

c)  INVESTMENTS made payments to the Plaintiff for the work performed by the Plaintiff installing lighting at INVESTMENTS properties

d)  Debtor deposited the payments obtained from INVESTMENTS for the work performed by Plaintiff installing lighting at INVESTMENTS properties into Plaintiff's bank account

e)  Debtor had just formed the HOLDINGS corporation in October, 2015;

f)  Debtor was in continuous discussions with INVESTMENTS to have INVESTMENTS make payment to Plaintiff for work relating to lighting installation;

g)  Debtor was in continuous discussions with INVESTMENTS to have INVESTMENTS make payment to HOLDINGS for work relating to cabinet installation and home remodeling;

h)  INVESTMENTS insisted upon Plaintiff to continue to work on lighting projects was a condition of INVESTMENTS making payment to Plaintiff on completed projects;

i)  INVESTMENTS insisted upon HOLDINGS to continue to work on kitchen cabinet installation and home remodeling projects as a condition of INVEST-MENTS making payment to HOLDINGS on completed projects; and

j)  INVESTMENTS was delinquent in making payments.

50.  In fact, INVESTMENTS was not delinquent in making payments for work performed by Plaintiff, either for the installation of lighting, kitchen cabinet installation or residential home remodeling.

51.  In fact, Debtor submitted no documentation from Plaintiff to INVESTMENTS

9

for lighting installation but instead submitted HOLDINGS' documents.

52. Debtor made the false statements to Plaintiff knowing them to be false.

53. Debtor made the false statements to Plaintiff to induce Plaintiff to rely on and act upon the statements to:

   a) provide product, equipment and labor for work for which Debtor and HOLDINGS expected to receive payments, but at the expense of the Plaintiff;

   b) use the credit of Plaintiff to obtain product to be used at INVESTMENTS property; and

   c) incur the expense of underwriting the installation and remodeling projects.

54. Plaintiff in reliance upon the accuracy and correctness of the false representations made by Debtor did incur the expense of providing product and labor to perform the work at INVESTMENTS properties for which Plaintiff did not receive reimbursement or compensation.

55. Plaintiff relied upon the false representations of Debtor to its detriment.

56. Debtor is indebted to Plaintiff for the damages sustained by Plaintiff arising from the false and fraudulent representations made by Debtor upon which the Plaintiff relied.

57. The debt owed by Debtor to Plaintiff as a result of Debtor's fraudulent conduct is not dischargeable.

### COUNT TWO--11 U.S.C. §523(a)(2)(A)
Debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud

58. Plaintiff repeats, restates and realleges each and every allegation contained Paragraphs 1 through 47, inclusive, and 49 through 57, inclusive, of this Complaint as if fully set forth herein verbatim.

59. Debtor knew at the time he induced Plaintiff to provide product and labor for work to be performed at INVESTMENTS properties for the installation of kitchen cabinets and home remodeling that HOLDINGS would not pay Plaintiff its expenses for same.

60. Debtor made the representations that HOLDINGS would pay Plaintiff from payments for kitchen cabinet installation and home remodeling at INVESTMENTS properties knowing the representations to be false and intending that the Plaintiff rely upon them.

61. Debtor knowingly made the misrepresentations to Plaintiff to induce Plaintiff to act upon them, which Plaintiff did to its detriment.

62. Debtor is indebted to Plaintiff for the damages sustained by Plaintiff arising from the false and fraudulent representations made by Debtor upon which the Plaintiff relied.

63. The debt owed by Debtor to Plaintiff as a result of Debtor's fraudulent conduct relating to the installation of kitchen cabinets and home remodeling is not dischargeable.

**COUNT THREE--11 U.S.C. §523(a)(4)**
Fraud or defalcation while acting in a
fiduciary capacity, embezzlement, or larceny

64. Plaintiff repeats, restates and realleges each and every allegation contained Paragraphs 1 through 47, inclusive, and 49 through 57, inclusive, of this Complaint as if fully set forth herein verbatim.

65. Debtor was a member of the Plaintiff and was employed by the Plaintiff as

11

Plaintiff's sales manager.

66. Debtor had a duty to not act against the interests of the Plaintiff and its other members.

67. Debtor breached his fiduciary duty to Plaintiff and his fellow members by:

a) promoting his company, HOLDINGS, in lieu of the Plaintiff when seeking to obtain the business of INVESTMENTS;

b) allowing Plaintiff to incur the expense of providing product and labor for lighting installation at INVESTMENTS properties knowing that his company, HOLDINGS would be the entity which would request payment from INVESTMENTS for the work;

c) allowing Plaintiff to incur the expense of providing product and labor at INVESTMENTS properties knowing that his company, HOLDINGS, would be the entity which would receive payment from INVESTMENTS for the work;

d) discouraging Plaintiff from communicating with INVESTMENTS to inquire about payments; and

e) allowing Plaintiff to incur the expense of providing product and labor at INVESTMENTS properties for kitchen cabinets and home remodeling knowing that Debtor's company, HOLDINGS, would not make payment to make Plaintiff whole.

68. As a result of Debtor's breach of his duties to Plaintiff, the Plaintiff has sustained damages.

69. The debt owed by Debtor to Plaintiff as a result of Debtor's defalcation while acting in a fiduciary relationship with Plaintiff is not dischargeable.

### **COUNT FOUR--11 U.S.C. §523(a)(4)**
Fraud or defalcation while acting in a
fiduciary capacity, embezzlement, or larceny

70. Plaintiff repeats, restates and realleges each and every allegation contained Paragraphs 1 through 47, inclusive, and 49 through 57, inclusive, of this Complaint as if

12

fully set forth herein verbatim.

71. During the course of Debtor's employment with Plaintiff as Plaintiff's sales manager, the Debtor engaged in acts of fraud, embezzlement and/or larceny by appropriating for his own use and benefit Plaintiff's assets, to-wit:.

### A.  Two (2) Payments of $75,000.00 each for Acquisition of Lighting Equipment

72. In two separate instance, Debtor represented to Plaintiff that Debtor had the opportunity though a personal business relationship to acquire lighting supplies and equipment at a special discount.

73. Debtor represented to Plaintiff that due to the Debtor's personal relationship with the third-party that all documentation and payment for the purchases must emanate from the Debtor.

74. At Debtor's request, on two (2) occasions Plaintiff presented Debtor a check in the sum of $75,000.00 for the purpose of acquiring lighting supplies and equipment for the benefit of Plaintiff.

75. Debtor did not provide Plaintiff with the supplies and equipment but instead retained the funds for his own benefit.

76. Debtor has not repaid the funds to Plaintiff.

77. The misuse of funds Plaintiff provided to the Debtor is an embezzlement and theft and/or larceny of Plaintiff's money.

### B.  Misuse of Plaintiff's American Express Account

78. Plaintiff provided Debtor with a corporate American Express credit card on Its American Express account for the purpose of occasionally paying Plaintiff's incidental business expenses.

79. Debtor used the American Express credit card for Debtor's own personal expenses, including, but not limited to, a down payment for an automobile, electric bills, medical bills, medical expenses, and the like.

80. Debtor did not request, and Plaintiff did not give, authorization to the Debtor to use the corporate American Express card for Debtor's personal expenses.

81. Plaintiff was obliged to maintain its credit with American Express and paid the unauthorized charges incurred by Debtor for his own personal benefit.

82. The debt owed to Plaintiff by Debtor for money owed arising from Debtor's fraud, embezzlement and/or larceny is not dischargeable.

## V. Requested Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter a Final Judgment which:

A. Adjudicates that the debts owed Plaintiff by Debtor are non-dischargeable debts pursuant to 11 U.S.C. §523

B. Establishes the amount of the debt owed by Debtor to Plaintiff.

C. Awards Court costs against Debtor.

D. Grants such other relief which as to the Court may deem fit and proper.

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional

qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

Dated on November 21, 2017.

                                        /s/ Jeffrey B. Lampert
                                        JEFFREY B. LAMPERT, Esq.
                                        Attorney for Creditor PROTON SOLUTIONS LLC
                                        The Barristers Building
                                        1615 Forum Place, Ste. 4-B
                                        West Palm Beach, FL  33401
                                        Tel. 561-333-0188 Fax. 561-333-0588
                                        lampertlaw@gmail.com
                                        FBN 260800